UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-31 |
| | ) | Judge Phillips |
| MARK EDWARD SCOTT | ) | |

# MEMORANDUM AND ORDER

Defendant Mark Edward Scott pled guilty to failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. 2250(a). The United States Probation Office has prepared and disclosed a Presentence Investigation Report ("PSR") [Doc. 23]. The defendant has filed objections to six of the proposed special conditions of supervised release in paragraph 61 of the PSR [Doc. 24]. The Probation Office has responded to the objections and declined to remove the proposed special conditions [Doc. 26]. The government has responded by concurring in the Probation Office's response [Doc. 30].

## I.  Background

In 1996, defendant was convicted in the Sixth Circuit Court of Pontiac, Michigan, of four counts of Second Degree Criminal Sexual Conduct involving his 14-year old step-

daughter [PSR ¶ 31].[1]  Defendant was thereafter required to register as a sex offender for a period of 25 years.  The defendant has had two subsequent convictions for driving related offenses [PSR ¶¶ 32—33], but he has had no further convictions or arrests for a sex offense.  In the instant case, the defendant was stopped by the Knoxville Police Department for speeding on January 4, 2017 [PSR ¶ 9].  The defendant admitted that he had been living habitually, although somewhat intermittently, in Knoxville since November 18, 2016, and continuously since December 26, 2016 [PSR ¶¶ 8—9].  The defendant did not notify authorities responsible for registering the defendant or for maintaining his sex offender registration status that he was residing in Knoxville [*Id*. at ¶ 10].

While on pretrial release in this case, the defendant submitted a diluted drug screen on July 13, 2017, and submitted several subsequent drug screens that were positive for marijuana [*Id*. at ¶ 4].  Following these positive drug screens, the defendant's pretrial release was revoked.

II.     **Analysis**

The defendant's objections pertain to the recommended imposition of six special sex-offender supervision conditions taken from this Court's Standing Order 15-06.  It is worth noting that defendant has not objected to *all* of the proposed special sex-offender supervision conditions.  *See, e.g.*, PSR paragraphs 61(b), (e)-(f), (k), 62.

---

[1]The agreed factual basis found in PSR paragraph 6 describes the victim of defendant's 1996 conviction as 13-years old, whereas she is described elsewhere as 14-years old [PSR ¶¶ 31, 43; Doc. 26].  This discrepancy is not material for purposes of the instant opinion.

Special conditions of supervised release must be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(1). They must also impose "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)," and be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(2), (d)(3). The Sixth Circuit set forth the following factors for consideration in imposing special conditions of supervised release:

> A sentencing court may impose a non-mandatory condition of supervised release only if it meets three requirements. First, the condition must be "reasonably related to" several sentencing factors. These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. These purposes are "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." Because they are written in the conjunctive, a condition must satisfy all three requirements. However, a condition need not satisfy every single factor and purpose within each of the first two requirements.

*United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (citations omitted).

In *Carter*, the defendant pled guilty in 2001 to being a felon in possession of a firearm. In 2005, the district court added a supervised release condition pertaining to sex offenders. Carter's criminal history included 1988 convictions for rape and assault with

intent to commit rape, along with a 2004 stalking conviction. The Sixth Circuit concluded that the 1988 convictions were too remote in time to justify the 2005 imposition of a sex-offender-treatment condition. *Id.* at 532. Carter's case was remanded for the district court to determine whether the 2004 stalking offense was sufficiently sexual in nature to justify imposition of the special condition. *Id.* at 533.

*Carter* did not, however, "decide precisely how much time must elapse before a sex offense becomes too remote in time to be reasonably related to a sex-offender condition." *Id.* at 532. Subsequently, the Sixth Circuit has affirmed the imposition of sex-offender conditions based on multiple sex offenses occurring as recently as 12 years prior. *See United States v. Brogdon*, 503 F.3d 555, 565 (6th Cir. 2007). In the 2006 case of *United States v. Perkins*, 207 F. App'x 559, the Sixth Circuit upheld a sex-offender-treatment condition in light of a 1995 sex offense conviction, a 1994 assault conviction, and older assault *charges*. *Id.* at 562.

A. <u>Sex Offender Mental Health Treatment</u>

Defendant's first objection is to paragraph 61(a) which recommends the imposition of special condition found in SO-15-06(1):

> The defendant shall participate in a program of sex offender mental health treatment at his/her own expense, as approved by the probation officer, until such time as he/she is discharged from treatment by the provider and as approved by the probation officer. The defendant shall comply with the policies and procedures of the treatment program. The defendant shall waive all rights to confidentiality regarding sex offender mental health treatment in order to allow release of information to the United States Probation Officer, and to authorize open communication between the probation officer and the treatment providers. (Any reference to the defendant paying for counseling, treatment, and/or assessments is an indication that the United States

4

> Probation Office will conduct a routine financial assessment of the defendant's ability to pay.)

[PSR ¶ 61(a)].

Defendant argues that he has already received sex offender treatment following his conviction in 1996, which included three polygraph examinations [Doc. 24 at p. 2]. Defendant also argues that his prior sex offense is too remote to justify the need for this special condition [*Id*. at p. 3]. The government and the Probation Office contend that this condition of supervision is appropriate because defendant has provided no verification of his previous sex offender counseling or the results of any treatment or evaluation [Doc. 26, Doc. 30 at pp. 6—7]. The Probation Office contends that sex offender treatment focuses on the defendant's specific issues and identifies his triggers for reoffending [Doc. 26]. In addition to identifying specific triggers, the Probation Office contends that the proposed special condition will hold the defendant accountable for current behaviors. The Probation Office specifically complains of defendant's desire to work at festivals where children are present and his attempt to obtain employment with Dave & Busters [*Id*.]. Finally, the Probation Office expresses concern over defendant's relationship with his wife's granddaughter "since the victim of the defendant's sex offense was his 14-year-old step-daughter" [*Id*.].

In addressing the nature and circumstances of the instant offense, it is worth noting that defendant's failure to register as a sex offender is not a "sex offense" as defined by U.S.S.G. §5D1.2, app. n. 1. However, the Guidelines permit the imposition of special conditions of supervision as "may otherwise be appropriate in particular cases." U.S.S.G.

§5D1.3(d). Although the defendant has a prior conviction for a sex offense, that offense occurred over 22 years ago. It will be even more remote after he serves a term of imprisonment for the instant offense. *See United States v. Hundley*, 625 F. App'x 274, 277 (6th Cir. 2015) (a more than 20-year time difference between a prior sex offense and instant conviction is too attenuated); *Carter*, 463 F.3d at 532 (17-year old sex offense is too remote to be reasonably related to a sex-offender condition). The defendant has had limited arrests and convictions in the interim, but none of those involve sex offenses. While the Probation Office and the government understandably would prefer to have verification of defendant's previous sex offender treatment, the Court accepts defense counsel's representation that he has made a good faith effort to locate such records and they no longer exist. Given the length of time since defendant's prior sex offense, this is not surprising.

The Probation Office has provided no information that defendant is likely to reoffend by committing a sex offense or that he presents a continuing risk as a sexual predator. Rather, the risk appears to be defendant's continued use of controlled substances. This risk is addressed by two mandatory conditions of supervision [PSR ¶ 59(b), (c)] and a proposed special condition of supervision of drug testing and treatment, to which defendant has not objected [PSR ¶ 65]. Further, the concern as to defendant's desire to continue his employment at festivals and/or at Dave & Busters can be more directly addressed by the special conditions concerning employment, discussed *infra*. Similarly, defendant's contact with minor family members is addressed directly by the special condition in PSR paragraph 61(c), also discussed *infra*. Thus, the requirement for sex offender mental health treatment is not tailored "to serve the goals of deterrence or public

6

safety, since the behavior on which the special condition … [is] based, though highly reprehensible, has ceased." *Carter*, 463 F.3d at 531 (quoting *United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001)). Accordingly, the Court finds that this proposed special condition of supervision is not reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) and the defendant's objection to paragraph 61(a) of PSR is **SUSTAINED**.

B. Psychosexual Assessment

Defendant also objects to PSR paragraph 61(h) which proposes the following special condition found in SO-15-06(8):

> The defendant shall submit to psychosexual assessment at his/her own expense, as directed by the probation officer.

[Doc. 23 at ¶ 61(h)]. Defendant objects to this proposed condition for the same reasons as the previous condition and he particularly objects to any requirement for plethysmograph testing as unreliable and highly invasive [Doc. 24 at pp. 3—5]. It is worth noting that the proposed condition as written does not specify the use of plethysmograph testing, but defendant asserts that the test is used "as part of a psychosexual assessment by the group contracted with to perform these assessments in the Knoxville Division of the Eastern District of Tennessee" [*Id*. at p. 4]. The defendant has indicated his intent to live in Michigan following his release from custody and therefore he would be supervised, and subject to assessment, in the Eastern District of Michigan. The Court has no information whether plethysmograph testing is currently used and/or recommended in the Eastern District of Michigan and cannot speculate on its use in the future. Accordingly, defendant's

7

objection to the potential use of plethysmograph testing is not yet ripe for review. *See United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007).

The Probation Office contends that a psychosexual assessment is a tool to assist in the identification of triggers for reoffending and to hold the defendant accountable for any current behavior [Doc. 26]. As noted above, defendant's current behavior is the failure to register as a sex offender, not any current sex offense. As with the previous condition, the current risk appears to be defendant's continued illegal use of controlled substances. There is no indication that his substance abuse demonstrates a likelihood that he will commit another sex offense. The Court further agrees that a psychosexual assessment presents a greater deprivation of liberty than is reasonably necessary for the purposes relevant to § 3553(a). Accordingly, defendant's objection to PSR paragraph 61(h) is **SUSTAINED**.

    C.    Polygraph Testing

Defendant's third objection is to PSR paragraph 61(i) which proposes the following special condition found in SO-15-06(9):

> The defendant shall submit to polygraph testing at his/her own expense, as directed by the probation officer, in order to determine if he/she is in compliance with the conditions of supervision, or to facilitate sex offender treatment. The defendant shall be truthful during polygraph evaluations.

[PSR at ¶ 61(i)]. The defendant relies on his previous arguments and further notes that polygraph evidence is disfavored as unreliable in the Sixth Circuit. Thus, defendant argues that significant liberty interests are at stake when the results of a polygraph examination could cause his supervision to be revoked [Doc. 24 at pp. 5—6]. Defendant also argues that he is indigent and will be indigent upon his release from prison.

8

As with the previous objections, the Probation Office responds that a polygraph examination is a tool to identify defendant's triggers for reoffending and to hold him accountable for his current behavior [Doc. 26]. The Probation Office also responds that polygraph testing will confirm the defendant's compliance with his conditions of supervision [*Id.*]. The government argues that polygraph testing serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation [Doc. 30]. The government also argues that polygraph examinations may detect deception from a person's demeanor and references the defendant's own deceptive conduct while on pretrial release in this case [Doc. 30]. Specifically, the government notes that defendant presented a diluted urine sample for drug screening and that he thereafter continued to use marijuana.[2]

While polygraph *evidence* may be unreliable, in the supervision context, polygraphs "are tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions; the tests are not geared toward the collection of evidence for prosecution of possible future parole violations." *United States v. Wilson*, No. 98-5373, 1998 WL 939987, at *3 (6th Cir. Dec. 22, 1998). There is evidence from the facts of this case and the defendant's conduct on pretrial release that he may not be completely forthright. The Probation Officer's concern that defendant will not be truthful about his conduct on supervision is warranted. As for defendant's speculative concern over a future

---

[2]The government also contends that the polygraph testing condition is appropriate because defendant "persisted in his requests to work at amusement based entertainment places where children tend to congregate despite warnings from the court and his probation office" [Doc. 30 at p. 7]. It is unclear why defendant's efforts to obtain employment would be considered "deceptive" given that he was required to "continue or actively seek employment" pursuant to the terms of his pretrial release [Doc. 12].

9

revocation of his supervision, he "retains the right to challenge the reliability of polygraph … tests should they be used in the future by the government as a basis for seeking revocation of his supervised release." *Wilson*, 1998 WL 939987, at *3. Accordingly, the Court finds that this condition is appropriate in light of the defendant's history and characteristics and the need for deterrence. Therefore, the defendant's objection to PSR paragraph 61(i) is **OVERRULED**.

D. Conditions of Employment

Defendant next objects to PSR paragraphs 61(d) and (j) which propose the following special conditions from SO-15-06:

> The defendant shall not visit, frequent, or linger about any place that is primarily associated with children under the age of 18 or at which children under the age of 18 normally congregate without the prior written approval of the probation officer. SO-15-06(4).
>
> All residences and employment shall be approved in advance by the probation officer. The defendant shall not participate in any volunteer activities requiring unsupervised contact with children under the age of 18, without approval of the probation officer. The defendant shall not engage in an activity that involves being in a position of trust or authority over any child or children under the age of 18. SO-15-06(10).

[Doc. 23 at ¶¶ 61(d), (j)]. Defendant requests that the Court approve in advance his employment with Jonathan Witz and Associates ("JWH") which involves working at outdoor festivals in Detroit, where he plans to reside once he is released from custody. The defendant's duties involve setting up seating and tents, handling maintenance issues, clearing walkways, blockading entrances, and handling canned goods which have been donated for charity [Doc. 24 at pp. 6—7]. The defendant contends that this job has meshed

well with his typical employment as a restaurant cook, but that he was not permitted to do this work on pretrial release when the public was present [*Id.*].

The Probation Office has responded that both of the proposed conditions permit the supervising officer to approve contact and permit employment [Doc. 26]. Further, the Probation Office notes "it is not possible to judge who will attend the festivals without being present" [*Id.*]. Similarly, the government notes that the defendant should seek permission from his supervising probation officer in Michigan for the type of activities that he proposes.

The Court agrees with the Probation Office and the government on these conditions. The conditions as written permit the supervising officer to give prior written approval of defendant's employment and his presence in a place where minor children "normally congregate." The Court is presently unable to assess the appropriateness of defendant's employment at unspecified outdoor festivals at undetermined times in the future. This assessment is more appropriately handled by the defendant's supervising probation officer at that time. The defendant's objections to PSR paragraphs 61(d) and 61(j) are **OVERRULED**.

  E. <u>Contact with Minor Relatives</u>

Defendant objects to PSR paragraph 61(c) which proposes the following special condition from SO-15-06(3):

> Other than incidental contact, which is defined as contact occurring merely by chance or without intention or calculation, the defendant shall not associate and/or be alone with children under 18 years of age, nor shall he/she be at any residence where children under the age of 18 are residing, without the prior written approval of the probation officer. If the defendant has any

11

> contact with any such minor not otherwise addressed in this condition, the defendant shall immediately leave the situation and notify the probation officer. This provision shall not apply to contact with the defendant's own minor children unless the court expressly so finds.

[Doc. 23 at ¶ 61(c)].

Defendant objects to this proposed condition because his wife's daughter frequently brings his wife's minor grandchildren to his home. While he was on pretrial release, defendant's probation officer allowed these children to be present in his home when defendant's wife or the children's mother was also present. Defendant requests that the Court modify the proposed condition to allow his wife's minor grandchildren to be present in his home when either his wife or their mother is present [Doc. 24 at p. 7].

The Probation Office and the government respond that the proposed condition already permits this type of contact to occur [Docs. 26, 30]. The Court concurs. The proposed condition as written permits the supervising probation officer to give prior written approval to such contact. As with the two proposed conditions concerning employment, the Court finds that the defendant's probation officer should assess the parameters of this condition at the time. Accordingly, the defendant's objection to PSR paragraph 61(c) is **OVERRULED**.

III. **Conclusion**

For the reasons set forth herein, the defendant's objections [Doc. 24] to the Presentence Investigation Report are **SUSTAINED in part and OVERRULED in part**. The defendant's objections to PSR paragraphs 61(a) and 61(h) are **SUSTAINED** and those

conditions of supervised release will not be imposed. The defendant's objections to PSR paragraphs 61(i), 61(d), 61(j), and 61(c) are **OVERRULED**.

Sentencing remains set for February 26, 2018, at 10:30 a.m. in Knoxville.

IT IS SO ORDERED.

                                                                  s/ Thomas W. Phillips
                                            SENIOR UNITED STATES DISTRICT JUDGE